**IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | |
|---|---|
| IN RE: | |
| **Matthew T. Stinson** | Case No.: 24-40755-BTR |
| Debtor. | Chapter: 7 |

**DEBTOR'S PARTIAL MOTION TO STRIKE AND
RESPONSE TO CAR ROU LA KIA, LLC'S
OBJECTIONS TO DEBTOR'S CLAIMED EXEMPTIONS**

TO THE HONORABLE BRENDA T. RHOADES,
CHIEF UNITED STATES BANKRUPTCY JUDGE:

NOW COMES MATTHEW T. STINSON, the Debtor in this case, and files this Partial Motion to Strike and Response (the "Response") to the Objections to Debtor's Claimed Exemptions ("Objections") of Car Rou La Kia, LLC ("CARS") and would show the Court as follows:

**A.     Summary of Motion and Response.**

1. After pursuing this Debtor for four full years (obtaining a 100% dischargeable judgment), CARS continues to litigate against Debtor and his family, now objecting to Debtor's homestead—despite Debtor having 12 years of Texas homestead equity—and Debtor's miscellaneous items on the dubious basis that, because Debtor lives in a nice home and has a spouse who "is involved with art,"[1] Debtor must also have a bunch of expensive stuff.  But not only do the Objections fail to meet their burden of rebutting Debtor's exemptions and valuation, they go further in violating the pleading rules by frivolously throwing around accusations of "fraud

---

[1] To be clear, Debtor's spouse is an *artist* (in addition to being an entrepreneur and former marketing/advertising executive).  CARS's wording—"involved with art"—wrongly insinuates she is somehow involved in the world of fine art collecting.

**DEBTOR'S PARTIAL MOTION TO STRIKE AND RESPONSE
TO CAR ROU LA KIA, LLC'S OBJECTIONS TO DEBTOR'S CLAIMED EXEMPTIONS              PAGE 1 OF 9**

or other improper activities" to attack Debtor's homestead exemption while saying nothing to explain the factual or legal basis of the claim. While Debtor does not dispute that better clarity on his valuations of his property was appropriate—and he has supplied that with his Amended Schedules—CARS has categorically failed to meet its burden and its Objections should be denied in their entirety.

2. This Response is supported by the Declaration of Matthew T. Stinson, attached hereto and incorporated herein as **Exhibit A**. The Declaration attaches and incorporates sub-exhibits marked **Exhibits A-1 through A-9**.

**B.    Procedural Background.**

3. On April 1, 2024, Debtor filed his Voluntary Petition to initiate this case, electing to claim property exemptions under Texas law. Pursuant to section 522 of title 11 of the U.S. Code (the "Bankruptcy Code"), Debtor claimed property exemptions under Texas state law when he filed his Voluntary Petition in this case. Dkt. 1.

4. On May 3, 2024, the Debtor's meeting of creditors under 11 U.S.C. § 341 took place and concluded.

5. On June 3, 2024, CARS filed the instant Objections. Dkt. 17.

6. On June 24, 2024, Debtor filed his Amended Schedules to provide further detail to the Trustee on the Stinsons' personal property. Dkt. 26.

**C.    CARS has failed to satisfy its evidentiary burden under Rule 4003(c). Moreover, the Court should strike those portions of the deficient Objections containing CARS's inflammatory fraud accusation.**

7. Under Rule 4003(c) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), CARS "has the burden of proving that the exemptions are not properly claimed." *Id.*; *see In re Shurley*, 163 B.R. 286, (Bankr. W.D.Tex. 1993) (objecting party cannot

carry its burden under FRCP 4003(c) "by merely impeaching" a debtor's valuation). CARS has not offered any evidence to support its Objections. Rather, CARS improperly attempts to shift the burden on Debtor to prove up his exemptions. *See e.g.,* Objections, ¶ 7 (objecting to Debtor's exemption "to the extent […] it is unsupported by evidentiary proof of value"). Because CARS has failed to meet its evidentiary burden as to *any* item of property, the Objection must be denied in its entirety.

8. Further, under Fed. R. Civ. P. 9, made applicable to this contested matter under Fed. R. Bankr. P. 7009, "in alleging fraud … [CARS] must state with particularity the circumstances constituting fraud…." Fed. R. Civ. P. 9(b). CARS' Objection fails to satisfy the heightened burden for alleging "fraud or other improper activities. The Court should not countenance such bare accusations filed of public record, and Debtor therefore asks the Court to strike paragraph 12 of the Objections.

### D. Debtor's homestead is fully exempt from the bankruptcy estate.

9. As an initial matter, the Objections to the Debtor's homestead should be stricken under Bankruptcy Rules 4003, 7009, 7012, and 9014 for the reasons stated above.

10. Even if not stricken, the Objections should be overruled for the reasons below.

11. Texas state and federal courts "have always construed [Texas's] exemption statutes in the ***most liberal manner and in favor of the debtor***." *In re Anthony*, 102 B.R. 600, 602 (Bankr. S.D.Tex. 1988) (emphasis added). The homestead exemption is particularly sacrosanct, as homesteads "are favorites of the law." *In re Phung Tan Huynh*, 602 B.R. 632, 637 (Bankr. S.D.Tex. 2019) (quoting *Perry v. Dearing (In re Perry)*, 345 F.3d 303, 316 (5th Cir. 2003)). The law is so heavily weighted in favor of protecting a claimed homestead, the Fifth Circuit states that courts "must uphold and enforce the Texas homestead laws even though in so doing [a court] might

unwittingly assist a dishonest debtor in wrongfully defeating his creditor." *Id.* (quoting *In re Bradley*, 960 F.2d 502, 507 (5th Cir. 1992)). This is not one such situation, but the quotation illustrates the reticence of Texas courts to entertain creditor attacks on homesteads.

12. Debtor's exempt interest in 1201 West Lamar St. is *not* subject to the 1,215 day rule[2] limiting his homestead exemption because the funds used to purchase this homestead were proceeds from the sale of Debtor's prior homestead of 3528 Marquette St, Dallas, Texas 75225. Debtor purchased the land for his Marquette homestead in 2013 and built and moved into his home in April 2015. Ex. A, ¶ 4. Debtor occupied his Marquette home as his sole residence for 6 years until selling the home in June 2021 to purchase his current homestead. *Id.*, ¶¶ 4-5. Even before that, Debtor lived at 3452 Amherst Ave., Dallas, Texas 75225 for six years from August 1, 2009 until he moved into his Marquette home in April 2015. *Id.*, ¶ 3. Thus, Debtor's home equity was earned from over a decade of Texas homestead protection dating back to 2009. Under section 522(p)(2)(B) of the Bankruptcy Code, any interest in a homestead acquired within 1,215 days of a debtor's petition date does not fall under section 522(p)'s exclusion if the interest was "transferred from a debtor's previous principal residence" if that previous residence was acquired prior to the beginning of the 1,215 day period. 11 U.S.C. § 522(p)(2)(B).

13. Debtor purchased the property at 3528 Marquette St., Dallas, Texas 75225 on or around May 30, 2013. *See* Ex. A, ¶ 3; Ex. A-1 (May 30, 2013 warranty deed). Debtor and his family continued to reside at their erstwhile homestead of 3452 Amherst Ave., Dallas, Texas 75225, purchased on August 1, 2009, while Debtor finished building the family's new home on Marquette. *Id.*, ¶¶ 3-4. In April 2015, the Stinsons put Amherst on the market (which sold on July

---

[2] *See* 11 U.S.C. § 522(p) (a debtor's homestead interest obtained within 1,215 days of filing bankruptcy will be limited to the federal exemption unless the homestead is either (A) a farmer's home, or (B) if the homestead was purchased with the proceeds from selling a prior homestead that was obtained more than 1,215 days before the petition date).

15, 2015), rolled the approximately $541,000.00 of equity from Amherst into Marquette, and made Marquette their sole residence and homestead. *Id.* From April 2015 until July 1, 2021, the Stinsons lived at Marquette and used it as their sole, permanent residence without interruption. *Id.*

14. The "1,215 day rule" was established as part of the 2005 legislative reform of the Bankruptcy Code. Its purpose was to close the Code's so-called "mansion loophole" whereby debtors could "evade creditors by filing bankruptcy after converting nonexempt assets into an expensive exempted homestead in one of the handful of states that have unlimited homestead exemptions." *In re Presto*, 376 B.R. 554, 580-81 (Bankr. S.D.Tex. 2007) (discussing legislative purpose at length). The rule was not meant to punish homeowners and buyers broadly by stripping them of any equity acquired within the four years preceding a bankruptcy. *See, e.g.*, *In re Rasmussen*, 349 B.R. 747, 758 (Bankr. M.D.Fla. 2006) (Section 522(p) was not meant to include "passive" appreciation in equity during the 1,215 days prior to bankruptcy).

15. The Stinsons built their equity in Amherst for six years, then Marquette over the course of six years of living in the home. After selling Marquette, the Stinsons rolled the equity into Lamar. *See* Ex. A, ¶ 6. And they *downgraded* by moving into Lamar, which had significantly lower market value than the Marquette house. *Id.*, ¶ 7. Clearly, the Stinsons were not attempting to convert nonexempt assets into exempt assets when they purchased Lamar.

E.    **2021 Toyota Land Cruiser.**

16. As shown in the Original and Amended Schedules, the vehicle is still subject to a bank lien for over $50,000.00, which significantly reduces the value of Debtor's interest in it. Only Debtor's *unencumbered* equity in the vehicle counts toward Texas's $100,000.00 exempt property cap for families. Tex. Prop. Code § 42.001(a)(1) (establishing $100,000.00 cap on "aggregate fair market value" of family property "***exclusive of the amount of any liens, security interests***. . .")

(emphasis added); *see also In re Anthony*, 102 B.R. 600, 601 (Bankr. S.D.Tex. 1988) (the encumbered value of Chapter 7 debtor's property did not count toward the aggregate fair market value cap under Texas exemption statute). So, even if one were to assume Debtor's vehicle is worth $85,000.00—the maximum value CARS posited (without evidence) in its Objections—the bank lien of $54,626.00 would leave only $30,374.00 in equity to count toward the exemption cap. And even if the property were nonexempt, its status as community property would mean Debtor is entitled to only half of that equity, or $15,187.00. *See Carnes v. Meador*, 533 S.W.2d 365, 371 (Tex.App.—Dallas 1975, writ ref'd n.r.e.) (spouses each have one-half interests in community property).

17. Furthermore, the vehicle was in a significant highway accident in April of 2022, which caused approximately $16,000.00 worth of damage, as corroborated by a damage estimate Debtor obtained from the accident. Ex. A, ¶ 8; *see* Ex. A-6 (photographs of the accident) and A-7 (damage estimate). The repair of the vehicle took two weeks. *Id.*, ¶ 8. Debtor reached his $70,000.00 fair market value estimate by starting with a Kelley Blue Book estimate—which shows a range of $72,595 to $77,763 as the trade-in value for a typical 2021 Toyota Land Cruiser in "good" condition with equivalent mileage—and then Debtor accounted for the depreciation caused by the accident, the stigma against vehicles that have accident histories, and the everyday usage of the vehicle. *Id*. Debtor also considered four distinct third-party Accident Diminished Value estimates that could negatively impact the fair market value by as much as $13,000. *Id.*, ¶ 8; *see* Ex. A-8.

### F. Household goods.

18. Debtor's Schedules constitute prima facie evidence of the items' respective values. *See In re Shurley*, 163 B.R. 286, 289-90 (Bankr. W.D.Tex. 1993) (overruling objection to

exemptions on grounds creditor failed to provide sufficient evidence to rebut Chapter 7 debtor's value estimates in schedules). CARS provides no evidence to rebut Debtor's valuations or support the dubious theory that there is "necessary cost" of furnishing "high-dollar-value homes." Objection, ¶ 7. The Amended Schedules provide a detailed listing of Debtor's household goods. They are to be appraised at "fair market value" as of the April 1, 2024 petition date, not according to their original retail prices. *In re Solly*, 392 B.R. 692, 696 (Bankr. S.D.Tex. 2008). Debtor's household goods are all heavily used. The only household goods in Debtor's Schedules with any material resale value are the used appliances and a few pieces of furniture that are nevertheless ten, or in some cases twenty years old. Ex. A, ¶ 9. And, again, these items are community property for which the estate could only recover 50% of their already minimal resale value.

  **G.**  **Jewelry, Art, Collectibles, and Electronics.**

  19.  Debtor's Amended Schedules provide additional details for this category. CARS provides no evidence to rebut Debtor's valuations of these categories of items or any evidence to support its opinion that Debtor's house is "well-decorated." Furthermore, CARS' baseless claims about "market rates" for the electronics are seemingly based on their retail prices, not the resale value of the used phones in question. Debtor's electronics are old, heavily used, or still being paid off, and their resale values would not significantly impact Debtor's exemption analysis. The Objection further fails to meet its burden by claiming Debtor's spouse is "involved with art" and, thus, there must be valuable art. Objection, ¶ 8. The Debtor's values for his spouse's creative paintings are unrebutted.

  **G.**  **Sports Equipment, Firearms, Clothing, and Pets.**

  20.  CARS objects to each of these categories of exemption despite providing no evidence to rebut Debtor's valuations. Debtor's Peloton machine is heavily used and he based his

price estimate on sale listings for used Peloton machines he found online. Ex. A, ¶ 9. Debtor has even provided a valuation for the family's 7- and 8-year-old cocker spaniels, both of which are neutered. Debtor's Amended Schedules also provided a valuation for his firearms based on internet resale listings for the exact models of firearm he owns. *See id.* at ¶ 9. As with the rest of its objections, CARS has not provided alternative valuations for any of the above items much less corroborating evidence.

## CONCLUSION AND PRAYER

CARS's Objections are frivolous because CARS has offered no evidence to rebut any claim of exemption or any of Debtor's property appraisals. Instead, CARS's Objection tries to shift the evidentiary burden onto the Debtor or, in total disregard for this Court's heightened pleading standards, cast suspicion on Debtor with a vague and unsubstantiated "fraud" accusation. For these reasons, the Court must overrule the Objections and allow Debtor's exemptions in their entirety.

WHEREFORE, PREMISES CONSIDERED, Debtor respectfully requests that the Court enter an order (i) striking the Objections against the homestead implying "fraud or other improper activities", (ii) overruling the Objections in their entirety, and (iii) granting Debtor all further and other relief to which he has shown himself entitled.

Dated:  July 29, 2024                    Respectfully submitted

                                           */s/Robert C. Rowe*
                                           Mark A. Castillo
                                              Texas State Bar No. 24027795
                                           Robert C. Rowe
                                              Texas State Bar No. 24086253
                                           Carrington, Coleman, Sloman & Blumenthal L.L.P.
                                           901 Main Street, Suite 5500
                                           Dallas, TX  75202
                                           Telephone: 214-855-3000
                                           Facsimile:   214-580-2641
                                           Email: markcastillo@ccsb.com
                                                                      rrowe@ccsb.com

                                           ***Counsel for the Debtor***

### **CERTIFICATE OF SERVICE**

       The undersigned hereby certifies that, on July 29, 2024, the foregoing document was served in accordance with via the Court's CM/ECF system on all parties who have filed a notice of appearance or request for notice in this case.

                                           */s/Robert C. Rowe*
                                           Robert C. Rowe